# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MELISSA WIGGINTON**                              **CIVIL ACTION**

**VERSUS**                                         **NO.  19-11418**

**SOCIAL SECURITY ADMINISTRATION**                 **SECTION: "G"(4)**

## ORDER AND REASONS

This matter is before the Court for a second time. Plaintiff Melissa Wigginton ("Plaintiff")

has been pursuing her claim for disability insurance benefits ("DBI") and supplemental security

income ("SSI") under Titles II and XVI of the Social Security Act (the "Act") since February

2013.[1] The matter first came before this Court in 2015 when Plaintiff initially filed an action for

judicial review of the final decision of the Acting Commissioner of the Social Security

Administration (the "Commissioner" or "Defendant") denying her claim for DBI and SSI.[2] On

March 6, 2017, this Court remanded the case to the ALJ for a new hearing and for further

consideration of the evidence.[3]

After holding the mandated hearing on June 14, 2018, the ALJ issued an opinion on

October 2, 2018 again denying Plaintiff's claim for DBI and SSI.[4] On April 25, 2019, the Social

Security Appeals Council affirmed the ALJ's decision.[5] On June 28, 2019, Plaintiff filed this

---

[1] Adm. Rec. at 170–179, 198.

[2] Case No. 15-6694, Rec. Doc. 1.

[3] Case No. 15-6694, Rec. Doc. 16.

[4] Adm. Rec. at 399–432, 393.

[5] *Id*. at 372–75.

second action for judicial review of that decision.[6] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On January 8, 2021, the Magistrate Judge recommended that the Court affirm the ALJ's decision.[7] Currently pending before the Court are Plaintiff's objections[8] to the Report and Recommendation.[9]

For the reasons discussed herein, the Court concludes that the ALJ mischaracterized the evidence regarding Plaintiff headaches and the mischaracterization substantially affected Plaintiff's rights because the ALJ failed to acknowledge the 24 instances of headaches noted in Plaintiff's medical records from 2013 through 2015, in addition to multiple instances in 2016 through 2018, when weighing the Medical Source Statement from Plaintiff's treating physician, Dr. Allen Larcena. Therefore, the Court concludes that the ALJ's decision to give little weight to Plaintiff's treating physician is not supported by substantial evidence in the record.

Moreover, because the ALJ found that Plaintiff's headaches were a severe impairment, but did not include any related limitation in Plaintiff's residual functioning capacity, the ALJ shall call a medical expert to determine if Plaintiff's headaches, as described in the record, could reasonably be expected to require Plaintiff to lay in a quiet, dark room for a day once or twice a month during the alleged period of disability.[10] If so, or if the medical expert finds other limitations due to Plaintiff's headaches, the limitations should be included when determining Plaintiff's residual

---

[6] Rec. Doc. 1.

[7] Rec. Doc. 28.

[8] Rec. Doc. 29.

[9] Rec. Doc. 28.

[10] SSR 96–2p. HALLEX I-2-5-34. *See also infra* notes 182 and 183.

functioning capacity. Accordingly, the Court sustains Plaintiff's objections, rejects the Magistrate Judge's Report and Recommendation, and remands the case to the ALJ for a new hearing with a medical expert to address Plaintiff's headaches when determining her residual functioning capacity.

## I. Background

*A.*    ***Procedural History***

### 1.    Initial Administrative Review and First Appeal

In February 2013, Plaintiff filed an application with the Social Security Administration for SSI and DBI, alleging disability due to petit mal seizures, fibromyalgia, edema of her feet or ankles, anxiety and depression, and chronic low platelets.[11] After her claims were denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on October 23, 2013.[12] Plaintiff, her mother, and a vocational expert testified at the hearing.[13]

On February 14, 2014, the ALJ issued a decision denying Plaintiff's application for benefits.[14] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[15] At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful

---

[11] Adm. Rec. at 170–179, 198.

[12] *Id*. at 32–73.

[13] *Id*.

[14] *Id*. at 13–27.

[15] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

activity since May 9, 2012.[16] At step two, the ALJ concluded that Plaintiff has the following severe

impairments: "complex partial seizures/epilepsy, Attention Deficit Hyperactivity Disorder

("ADHD"), fibromyalgia, headaches, and anxiety."[17] At step three, the ALJ held that Plaintiff did

not have an impairment or combination of impairments that meets or medically equals the severity

of one of the listed impairments under the regulations.[18]

 At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

perform light work "with some additional constraints."[19] Specifically, the ALJ found that Plaintiff

"can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can stand/walk for a

total of 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; never climb

---

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[16] Adm. Rec. at 18.

[17] *Id*.

[18] *Id*. at 19.

[19] *Id*. at 20.

ladders, ropes, scaffolds; occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; and avoid all exposure to hazards in the workplace."[20] The ALJ determined that Plaintiff was able to understand, remember, and carry out simple instructions, and that Plaintiff could maintain attention for at least a two-hour time period and engage in appropriate social interactions.[21]

In evaluating Plaintiff's RFC, the ALJ declined to give controlling weight to an opinion of Plaintiff's treating physician, Dr. Allan Larcena, dated October 24, 2013.[22] Dr. Larcena found that Plaintiff experienced headaches of sufficient severity to require her to recline in a quiet, dark room about twice per month for two to three days.[23] Dr. Larcena indicated that Plaintiff's headaches had become more frequent since May 2012, and he stated that Plaintiff experienced severe headaches at least twice per week.[24] The ALJ reasoned that Dr. Larcena's opinion was "wholly inconsistent with the other medical evidence of record including his own treatment records."[25] Specifically, the ALJ found that the treatment provided by Dr. Larcena "was routine and conservative in nature," and the ALJ found no evidence from Dr. Larcena's records that Plaintiff's complaints reached "a disabling level or required aggressive management."[26] The ALJ also reviewed a medical record

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at 25.

[23] *Id.* at 370.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 22.

from Plaintiff's treatment with Dr. Gregory Redmann at the Tulane Medical Center on January 29, 2013.[27] The ALJ noted that the January 29, 2013 record showed "no evidence of . . . headaches."[28]

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.[29] However, at step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.[30] Therefore, the ALJ determined that Plaintiff was not under a disability from May 9, 2012 through the date of the decision.[31]

Plaintiff requested review of this decision by the Appeals Council.[32] The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on May 8, 2015.[33] On December 10, 2015, Plaintiff filed a complaint in this Court seeking judicial review pursuant to Section 405(g) of the Act.[34]

On March 6, 2017, this Court remanded the case to the ALJ for a new hearing and for further consideration of the evidence.[35] In reaching this decision, the Court noted that the ALJ

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 26.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 7–10.

[34] Case No. 15-6694, Rec. Doc. 1.

[35] Case No. 15-6694, Rec. Doc. 16.

misstated certain portions of the medical record.[36] Contrary to the ALJ's assertion that Plaintiff did not complain of headaches during her medical appointments in January and October 2013, the Court noted that the progress notes from both appointments show that Dr. Redmann increased Plaintiff's dosage of Topamax to "treat her migraines."[37] The Court found that the increased dosage of Topamax to treat Plaintiff's migraines appeared to be consistent with Dr. Larcena's opinion that Plaintiff's headaches had increased in severity since May 2012.[38] Furthermore, the Court noted that the ALJ's decision did not consider any of the other factors set forth at 20 C.F.R. § 404.1527(c) for determining whether to give a treating physician's opinion controlling weight.[39] Therefore, the Court found that the ALJ's misstatements of the evidence substantially affected Plaintiff's rights.[40] Accordingly, the Court remanded the case to the agency for a new hearing and for more adequate consideration of the record.[41]

## 2. Remand and Second Appeal

The mandated hearing took place on June 14, 2018, and on October 2, 2018, the ALJ issued an opinion again denying Plaintiff's claim for DBI and SSI.[42] The ALJ again analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[43] At step one, the ALJ concluded

---

[36] *Id.* at 23.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* at 24.

[41] *Id.*

[42] Adm. Rec. at 399–432, 393.

[43] *Id.* at 383–93.

that Plaintiff had not engaged in substantial gainful activity since May 9, 2012.[44] At step two, the ALJ concluded that Plaintiff has the following severe impairments: "minor motor seizure disorder; headaches; fibromyalgia; obesity; an attention deficit disorder; a depressive disorder; and an anxiety disorder."[45] At step three, the ALJ held that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[46]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with some additional restrictions.[47] Specifically, the ALJ found that Plaintiff "can never climb ladders, ropes or scaffolds; but can occasionally climb ramps and stairs"; "occasionally balance, stoop, crouch, kneel, and crawl"; "cannot work with dangerous and/or moving machinery; cannot work at unprotected heights; and cannot engage in commercial driving."[48] Furthermore, the ALJ found that Plaintiff was limited to unskilled jobs that do not involve routine and repetitive work, and she "cannot do work that involves strict production quotas such as working on an assembly line."[49] Additionally, the ALJ found that Plaintiff "cannot have

---

[44] *Id*. at 383.

[45] *Id*.

[46] *Id*.

[47] *Id*. at 385.

[48] *Id*.

[49] *Id*.

direct interaction with the public while carrying out job duties such as needed to perform the job of a cashier or receptionist," to include interacting over the telephone.[50]

In evaluating Plaintiff's RFC, the ALJ gave "very little weight" to the October 24, 2013 opinion of Dr. Larcena.[51] Although Dr. Larcena indicated that Plaintiff's headaches were more frequent after May 2012, the ALJ found that the treatment notes did not indicate that Plaintiff complained of headaches when Dr. Larcena evaluated Plaintiff on March 27, 2013 or in May 2013.[52] The ALJ found that Dr. Larcena's "progress notes, examinations, objective test results, and other treatment" do not support a finding that Plaintiff is disabled.[53] Additionally, the ALJ noted that Plaintiff had continued treatment with Dr. Larcena from November 2013 through June 2018 at one to five month intervals.[54] Plaintiff complained of headaches in January 2014, October 2014, and July 2017.[55] Plaintiff complained of discomfort in her buttocks in June 2014 and of back pain in August 2015.[56]

Therefore, the ALJ found that Plaintiff's "additional treatment with Dr. Larcena, where she experienced very occasional headaches, an episode of discomfort in the buttocks, and an episode of back pain, further establishes that the opinion of the treating physician made in October 2013

---

[50] *Id.*

[51] *Id.* at 388, 391.

[52] *Id.* at 388.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

was not an accurate representation of the degree of limitation caused by [Plaintiff's] impairments."[57] The ALJ noted that "[n]one of the physicians who examined [Plaintiff] reported that she was disabled or unable to work at a job on a regular and continuous basis with the exception of her treating physician, Dr. Larcena."[58] The ALJ concluded that Dr. Larcena's opinion "should be accorded very little weight" because "the limitations expressed by Dr. Larcena in his Medical Source Statement are far in excess of that shown by his laboratory and his clinical findings, and the clinical findings of others appearing in evidence."[59]

At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work.[60] However, at step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.[61] Specifically, the ALJ found that Plaintiff could work as an "office helper," housekeeper, or laundry worker.[62] Therefore, the ALJ determined that Plaintiff was not under a disability from May 9, 2012 through the date of the decision.[63]

---

[57] *Id.*

[58] *Id.* at 391.

[59] *Id.*

[60] *Id.* at 392.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 393.

On April 25, 2019, the Social Security Appeals Council affirmed the ALJ's decision.[64] On June 28, 2019, Petitioner filed this action for judicial review of that decision.[65]  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On February 5, 2020, the Commissioner answered the complaint.[66]

On April 6, 2020, Plaintiff filed a brief arguing that the ALJ's decision: (1) erroneously rejected the findings of her treating physician without providing a valid reason for doing so and (2) relies upon a hypothetical question that does not include Plaintiff's migraine headaches.[67] On June 15, 2020, the Commissioner filed a reply brief arguing that substantial evidence supports the ALJ's determination that Plaintiff was not disabled.[68]

On January 8, 2021, the Magistrate Judge recommended that the ALJ's decision be affirmed.[69] On January 22, 2021, Plaintiff filed objections to the Report and Recommendation.[70]

**B.    *Report and Recommendation Findings***

On January 8, 2020, the Magistrate Judge recommended that the ALJ's decision be affirmed.[71] First, the Magistrate Judge addressed Plaintiff's claim that the ALJ's decision erroneously rejected the findings of her treating physician without providing a valid reason for

---

[64] *Id.* at 372–75.

[65] Rec. Doc. 1.

[66] Rec. Doc. 16.

[67] Rec. Doc. 24.

[68] Rec. Doc. 27.

[69] Rec. Doc. 28.

[70] Rec. Doc. 29.

[71] Rec. Doc. 28.

doing so.[72] The Magistrate Judge noted that the medical records documented seven instances of migraines in 2013, but the Magistrate Judge found that those instances were sporadic.[73] Therefore, the Magistrate Judge determined that the medical records do not support Plaintiff's claim that she was having two to three migraines per week during that period.[74] While Plaintiff argued that there were over 50 instances of complaints of headaches from 2013–2018, the Magistrate Judge found that to be a misreading of the records.[75] The Magistrate Judge determined that "[o]n several instances the past medical history, which identified migraines, was actually picked up as a current complaint of migraines when it was not."[76] Therefore, the Magistrate Judge found that the ALJ's decision rejecting the findings of the treating physician was supported by the record and there was substantial evidence supporting the findings of the ALJ.[77]

Next, the Magistrate Judge addressed Plaintiff's claim that the ALJ relied on a hypothetical question to the vocational expert that did not include Plaintiff's migraine headaches.[78] Because the ALJ's rejection of the treating physician's finding regarding the increased frequency of migraines was supported by substantial evidence, the Magistrate Judge found that "it was appropriate for the

---

[72] *Id*. at 13.

[73] *Id*.

[74] *Id*.

[75] *Id*. at 14.

[76] *Id*.

[77] *Id*. at 15.

[78] *Id*.

ALJ to include her limitations but not those based on assumptions that were rejected."[79] Accordingly, the Magistrate Judge recommends that this Court affirm the decision of the ALJ.[80]

## II. Objections

### A.    *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on January 22, 2021.[81] First, Plaintiff argues that the ALJ relied on a hypothetical question that did not include Plaintiff's migraine headaches.[82] Plaintiff notes that the ALJ decision found that Plaintiff's migraine headaches were "severe."[83] Plaintiff asserts that hypotheticals posed to a vocational expert must include all disabilities recognized by the ALJ.[84] Plaintiff contends that the ALJ adopted a hypothetical that did not include any restrictions imposed by her migraine headaches.[85] Plaintiff argues that the "determination of non-disability based on such a defective question cannot stand."[86]

Plaintiff also argues that the ALJ erred by rejecting the findings of the treating physician without providing a valid reason for doing so.[87] Plaintiff contends that the Magistrate Judge offered

---

[79] *Id.* at 16.

[80] *Id.*

[81] Rec. Doc. 29.

[82] Rec. Doc. 29-2 at 2–3.

[83] *Id.* at 2.

[84] *Id.* at 2–3 (citing *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001)).

[85] *Id.* at 3.

[86] *Id.* at 3–4 (quoting *Boyd*, 239 F.3d at 706).

[87] *Id.* at 6.

reasoning that the ALJ's decision did not include.[88] Plaintiff asserts that the Magistrate Judge confused "the number of complaints to physicians about migraines with the number of actual migraines."[89] Plaintiff argues that the ALJ and the Magistrate Judge relied on "a few instances of treatment not accompanied by complaints of headaches" to support a conclusion that Dr. Larcena's opinion was not entitled to controlling weight.[90] Plaintiff also argues that the Magistrate Judge confused "Dr. Larcena's finding that as of October 24, 2013 plaintiff's headaches were more frequent than in her proposed onset date of May 2012 with a finding that plaintiff's headaches became more frequent immediately after May 2012."[91] Therefore, Plaintiff argues that the ALJ decision offers no valid evidence nor valid reasoning for rejecting the findings of Dr. Larcena.[92]

Plaintiff notes that she has been pursuing this claim since February 19, 2013.[93] If the case is remanded again, Plaintiff asserts that the claim "will face an uncertain future at an uncertain future date, particularly considering the delays resulting from COVID 19."[94] Plaintiff contends that she has made a *prima facie* case of disability.[95] Therefore, Plaintiff requests that the Court reverse the ALJ's decision and find Plaintiff "to have been disabled and entitled to a Period of Disability and Disability Insurance Benefits since May 9, 2012, when she was constrained to quit

---

[88] *Id.*

[89] *Id.* at 2, 9.

[90] *Id.* at 8.

[91] *Id.* at 2, 12.

[92] *Id.* at 13.

[93] *Id.*

[94] *Id.*

[95] *Id.*

working because of her disabilities or at least since December 31, 2012, her date of last insurance."[96]

## B.    The Commissioner's Response

On March 9, 2021, the Commissioner filed a response to Plaintiff's objections.[97] The Commissioner submits that the ALJ's decision should be affirmed and the Complaint should be dismissed in its entirety.[98]

First, the Commissioner argues that substantial evidence supports the ALJ's step five determination. According to the Commissioner, the ALJ properly discounted Dr. Larcena's opinion.[99] The Commissioner argues that the ALJ is not bound by vocational expert testimony that was based on the restrictions imposed by Dr. Larcena because the ALJ rejected Dr. Larcena's opinion.[100] The Commissioner asserts that Plaintiff's argument that the ALJ should have included further limitations to account for migraine headaches is unavailing.[101] The Commissioner notes that Plaintiff points to no specific medical evidence that she contends the ALJ should have relied upon but did not.[102] According to the Commissioner, Plaintiff failed to demonstrate that the ALJ did not consider the combined effects of all impairments.[103]

---

[96] Id.

[97] Rec. Doc. 31.

[98] Id. at 1.

[99] Id. at 2.

[100] Id.

[101] Id.

[102] Id.

[103] Id.

15

Next, the Commissioner asserts that the ALJ properly weighed Dr. Larcena's opinion.[104] The Commissioner notes that "Plaintiff concedes that the records show numerous instances where Plaintiff did not complain of headaches."[105] The Commissioner submits that the ALJ thoroughly considered Dr. Larcena's opinion and gave specific reasons for assigning his Medical Source Statement limited weight.[106] Specifically, the ALJ noted that although Plaintiff had a long treatment history with Dr. Larcena, a finding that Plaintiff was disabled was not supported based upon Dr. Larcena's progress notes, examinations, objective test results, and other treatment.[107] Finally, the Commissioner argues that Dr. Redmann's findings in January 2013 contradict Dr. Larcena's opinion that Plaintiff must recline about twice a month in a quiet, dark room for two to three days because of migraine headaches.[108] The Commissioner notes that Dr. Redmann's examination of Plaintiff was essentially normal with no constitutional, respiratory, cardiovascular, gastroenterology, urology, endocrinology, musculoskeletal, skin, or neurology symptoms.[109] Therefore, the Commissioner asserts that substantial evidence supported the ALJ's decision.[110]

---

[104] *Id*.

[105] *Id*. at 3.

[106] *Id*.

[107] *Id*.

[108] *Id*. at 4.

[109] *Id*.

[110] *Id*. at 5.

# III. Standards of Review

## A.      Standard of Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[111]  The district judge must "determine de novo any part of the [Report and Recommendation] that has been properly objected to."[112] A district court's review is limited to plain error for parts of the report which are not properly objected to.[113]

## B.      Standard of Review of Commissioner's Final Decision on DIB and SSI Benefits

Under 42 U.S.C. § 405(g), the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[114] Appellate review of the Commissioner's denial of DIB and SSI benefits[115] is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[116] "Substantial evidence is more than a scintilla, less than a preponderance, and is such

---

[111] FED. R. CIV. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1).

[112] Id.

[113] See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[114] 42 U.S.C. § 405(g).

[115] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for supplemental security income ("SSI").  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n. 3 (5th Cir. 1988).

[116] Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[117] The Court must review the whole record to determine if such evidence exists.[118] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[119] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[120] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[121]

## IV. Law and Analysis

### A.      *Law Applicable to Qualification for DIB and SSI*

To be considered disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[122] The Commissioner has promulgated

---

[117] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[118] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[119] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[120] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[121] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[122] 42 U.S.C. § 423(d)(1)(A).

regulations that provide procedures for evaluating a claim and determining disability.[123] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, which terminates if the Commissioner finds at any step that the claimant is or is not disabled.[124] The claimant has the burden of proof under the first four parts of the inquiry and if she successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment which is available in the national economy.[125]

In the opinion issued after remand by this Court, the ALJ found that Plaintiff's "minor motor seizure disorder; headaches; fibromyalgia; obesity; an attention deficit disorder; a depressive disorder; and an anxiety disorder" were severe conditions within the meaning of the Act.[126] The ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments under the regulations.[127] The ALJ found that Plaintiff had the RFC to perform light work with some additional restrictions.[128] Specifically, the ALJ found that Plaintiff "can never climb ladders, ropes or scaffolds; but can occasionally climb ramps and stairs"; "occasionally balance, stoop, crouch, kneel, and crawl"; "cannot work with dangerous and/or moving machinery; cannot work at unprotected heights; and cannot engage in commercial

---

[123] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[124] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[125] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[126] Adm. Rec. at 383.

[127] *Id.*

[128] *Id.* at 385.

driving."[129] Furthermore, the ALJ found that Plaintiff was limited to unskilled jobs that do not involve routine and repetitive work, and she "cannot do work that involves strict production quotas such as working on an assembly line."[130] Additionally, the ALJ found that Plaintiff "cannot have direct interaction with the public while carrying out job duties such as needed to perform the job of a cashier or receptionist," to include interacting over the telephone.[131] The ALJ concluded that Plaintiff could not perform her past relevant work, but that jobs exist in significant numbers in the national economy that Plaintiff could perform.[132] Accordingly, the ALJ concluded that Plaintiff was not disabled from May 9, 2012 through the date of the decision.[133] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[134]

**B.    *The ALJ's Rejection of the Findings of Plaintiff's Treating Physician***

The Magistrate Judge found that the ALJ's decision in which she did not give controlling weight to Dr. Larcena's Medical Source Statement was based upon substantial evidence and should be affirmed.[135] Plaintiff objects to this determination, arguing that the ALJ's decision provided no specific or valid reason for rejecting Dr. Larcena's finding.[136] Plaintiff argues that the ALJ and the Magistrate Judge improperly relied on "a few instances of treatment not accompanied

---

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Id.* at 392.

[133] *Id.*

[134] *See Perez*, 415 F.3d at 461.

[135] Rec. Doc. 28.

[136] Rec. Doc. 29-2.

by complaints of headaches" to support a conclusion that Dr. Larcena's opinion was not entitled to controlling weight.[137]

> Under the Social Security Act,
>
> [t]he Commissioner of Social Security is directed to make any findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security, which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.[138]

Therefore, under "the explicit terms of the statute, the ALJ is required to discuss the evidence offered in support of [the plaintiff's] claim for disability and to explain why she found [the plaintiff] not to be disabled at that step."[139] However, the Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"[140]

Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight.[141] "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial

---

[137] *Id*. at 8.

[138] 42 U.S.C. § 405(b)(1).

[139] *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

[140] *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

[141] *Greenspan*, 38 F.3d at 237.

evidence.'"[142] "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[143]

In *Loza v. Apfel*, the Fifth Circuit noted that "[m]edical evidence must support a physician's diagnosis, but if it does the expert opinion of a treating physician as to the existence of a disability is binding on the fact-finder unless contradicted by substantial evidence to the contrary."[144] Further, "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[145] 20 C.F.R. § 404.1527(c) provides a list of factors that the ALJ should consider in determining whether to give a treating physician controlling weight, including: (1) the "length of the treatment relationship and the frequency of examination"; (2) the "nature and extent of the treatment relationship"; (3) the "relevant evidence" the medical source presented to support the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the medical source; and (6) any other factors that "tend to support or contradict the opinion."

Plaintiff argues that the ALJ erred in rejecting the Medical Source Statement completed by Dr. Larcena on October 24, 2013, which provided in part that at least twice per month Plaintiff experienced headaches of sufficient severity to require her to recline in a quiet, dark room for two to three days.[146] The Medical Source Statement also stated that Plaintiff's headaches had become

---

[142] *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).

[143] *Id.*; *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (internal citations omitted).

[144] *Loza*, 219 F.3d at 393 (internal citations and quotation marks omitted).

[145] *Id.* (internal citations omitted).

[146] Adm. Rec. at 370.

more frequent since May 2012, and that Plaintiff was experiencing severe headaches at least twice per week.[147] Plaintiff asserts that the ALJ did not provide a valid reason for rejecting the Medical Source Statement.

Plaintiff's migraine headaches are mentioned nine times in the medical records from 2013.[148] On three occasions in 2013, Dr. Redmann stated that he would "try to help prevent any breakthrough [seizures] and treat [Plaintiff's] migraines by increasing topomax [sic]."[149] On the third occasion, the report states, "Migraines usually respond to fiorcet [sic]."[150] However, Fioricet is not listed in the "current medications" section of the same report, and it was not prescribed by Dr. Redmann.[151] The Magistrate Judge found that the ALJ may have misinterpreted this portion of the report when the ALJ stated that "Dr. Redmann noted that the claimant was experiencing

---

[147] *Id.*

[148] *Id.* at 252 (report from January 24, 2013 evaluation by Dr. Lacerna mentioning headaches); *Id.* at 245–47 (report from January 29, 2013 evaluation by Dr. Redmann stating he would "try to help prevent any breakthrough [seizures] and treat her migraines by increasing topomax [sic] slightly by 25mg PM dose"); *Id.* at 251 (report from March 6, 2013 evaluation by Dr. Lacerna mentioning headaches); *Id.* at 250 (report from March 19, 2013 evaluation by Dr. Lacerna mentioning headaches); *Id.* at 279–80 (report from April 10, 2013 evaluation by Dr. Shah mentioning prior diagnosis of migraine headaches), *Id.* at 285–88 (report from June 28, 2013 evaluation by Dr. Redmann stating he would "try to help prevent any breakthrough [seizures] and treat her migraines by increasing topomax [sic] to 75 mg and then 100 mg by mouth every afternoon"); *Id.* at 366–68 (report from October 15, 2013 evaluation by Dr. Redmann stating he would "try to help prevent any breakthrough [seizures] and treat her migraines by increasing topomax [sic] to 100 mg bid. Migraines usually respond to fioricet. [sic]"); *Id.* at 370 (the October 24, 2013 medical source statement by Dr. Larcena); *Id.* at 690 (report from November 5, 2013 evaluation by Dr. Lacerna mentioning headaches).

[149] *Id.* at 245–47 (report from January 29, 2013 evaluation by Dr. Redmann stating he would "try to help prevent any breakthrough [seizures] and treat her migraines by increasing topomax [sic] slightly by 25mg PM dose"); *Id.* at 285–88 (report from June 28, 2013 evaluation by Dr. Redmann stating he would "try to help prevent any breakthrough [seizures] and treat her migraines by increasing topomax [sic] to 75 mg and then 100 mg by mouth every afternoon"); *Id.* at 366–68 (report from October 15, 2013 evaluation by Dr. Redmann stating he would "try to help prevent any breakthrough [seizures] and treat her migraines by increasing topomax [sic] to 100 mg bid. Migraines usually respond to fioricet [sic].").

[150] *Id.* at 366–68 (report from October 15, 2013 evaluation by Dr. Redmann).

[151] *Id.*

migraine headaches; however, he explained that her migraines usually responded to treatment with Fioricet."[152] Nevertheless, the Magistrate Judge found that this error was harmless because "the record shows [] that Dr. Redmann was adjusting her Topamax and that it was ultimately effective at reducing the frequency of her migraines."[153]

However, it is not apparent to this Court what portion of the medical records the Magistrate Judge was relying on to find that the adjustment of the Topamax dosage was effective at reducing the frequency of Plaintiff's migraines. After Dr. Redmann adjusted the dosage three times in 2013, Plaintiff went on to complain to Dr. Larcena of headaches eight times in 2014.[154] On October 23, 2014, Plaintiff was also evaluated by Dr. Hans Schuller of the Sleep Disorder Center.[155] The treatment notes reflect that Plaintiff reported experiencing "migraine headaches in the morning" and complained of "headaches frequently."[156] Plaintiff also complained to Dr. Larcena of headaches seven times in 2015.[157] Plaintiff was seen by Dr. Larcena less frequently in 2016, 2017,

---

[152] Rec. Doc. 28 at 14–15.

[153] Id. at 15.

[154] Adm. Rec. at 689 (report from January 27, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 687 (report from March 4, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 686 (report from March 27, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 684 (report from October 2, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 683 (report from October 16, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 680 (report from November 25, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 678 (report from December 4, 2014 evaluation by Dr. Lacerna mentioning headaches); Id. at 679 (report from December 10, 2014 evaluation by Dr. Lacerna mentioning headaches).

[155] Id. at 681–82.

[156] Id.

[157] Id. at 677 (report from March 30, 2015 evaluation by Dr. Lacerna mentioning headaches); Id. at 676 (report from April 9, 2015 evaluation by Dr. Lacerna mentioning headaches); Id. at 675 (report from May 4, 2015 evaluation by Dr. Lacerna mentioning headaches); Id. at 674 (report from August 7, 2015 evaluation by Dr. Lacerna mentioning headaches); Id. at 673 (report from August 13, 2015 evaluation by Dr. Lacerna mentioning headaches); Id. at 672 (report from September 9, 2015 evaluation by Dr. Lacerna mentioning headaches); Id. at 671 (report from November 10, 2015 evaluation by Dr. Lacerna mentioning headaches).

and 2018, but headaches are mentioned on all but one of the eight treatment notes during that three-year period.[158]

Plaintiff was seen by Dr. John Freiberg at the Tulane Medical Center nine times between February 24, 2014 and March 12, 2018.[159] It appears that Dr. Freiberg took over the treatment for Plaintiff's seizure disorder from Dr. Redmann.[160] This treatment appears to have focused on Plaintiff's seizure disorder and attention deficit disorder.[161] The treatment notes do not mention Plaintiff's migraines except in the "past medical history" section of the reports.[162]

Plaintiff testified to the severity of her migraines at the June 14, 2018 hearing.[163] She testified that her headaches cause her to become tired, lighthearted, dizzy, and nauseous.[164] The severe headaches require her to "lay down and just try to sleep it off or lay down in a dark room where it's really quiet."[165] Plaintiff testified that she was experiencing migraines at least twice a week.[166] She testified that the migraines differ in severity.[167] Sometimes they require her to lay

---

[158] *Id.* at 663–70.

[159] *Id.* at 621–45.

[160] *Id.* at 643.

[161] *Id.* at 621–45.

[162] *Id.*

[163] *Id.* at 405–06.

[164] *Id.* at 405.

[165] *Id.* at 405–06.

[166] *Id.* at 406.

[167] *Id.*

down in a dark room for two to four days.[168] Plaintiff testified that on average she spends four to five days a week in bed trying to cope with her headaches.[169] The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms."[170] However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [was] not entirely consistent with the medical evidence."[171]

There are six factors set forth at 20 C.F.R. § 404.1527(c) for determining whether to give a treating physician's opinion controlling weight.[172] Additionally, when the treating source's

---

[168] *Id.*

[169] *Id.*

[170] *Id.* at 391.

[171] *Id.*

[172] (1) Examining relationship. Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.
[…]
(3) Supportability. The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources.

26

medical opinion is not given controlling weight, § 404.1527(c)(2) requires two additional factors to be considered by the ALJ.[173] Furthermore, the regulation is construed in Social Security Ruling ("SSR") 96–2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.[174]

---

(4) Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.

(5) Specialization. We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

[173] (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's medical opinion more weight than we would give it if it were from a nontreating source.

[174] SSR 96–2p, 61 F.R. 34490, 34491 (July 2, 1996) (emphasis added). As quoted in *Newton*, 209 F.3d at 456.

Despite Dr. Larcena's lengthy treatment history with Plaintiff, the ALJ declined to give controlling weight to Plaintiff's treating physician because the physician had not seen Plaintiff for five months prior to giving his opinion on the frequency and severity of her headaches.[175] The ALJ fails to explain why she found Dr. Larcena's October 2013 opinion to be inconsistent with other substantial medical evidence when there are the nine instances of headache complaints from Plaintiff in the medical records from January 2013 through November 2013.[176] Additionally, Dr. Larcena continued to treat Plaintiff for headaches in 2014 and 2015.[177] Plaintiff was seen by Dr. Larcena less frequently in 2016, 2017, and 2018, but headaches are mentioned on all but one of the eight treatment notes during that three-year period.[178] Confusingly, the ALJ takes issue with the fact that no other doctors who treated or evaluated Plaintiff found that she was disabled or unable to work at a job on a regular and continuous basis.[179] As 20 C.F.R. § 404.1527(d) states, "opinions that [complainants] are disabled" are "issues reserved to the Commissioner."

Regardless of the weight the ALJ chose to give to Dr. Larcena's Medical Source Statement, the record is clear that Plaintiff complained of and suffered from severe headaches or migraines for multiple years.[180] **While this Court is not permitted to reweigh the evidence, the Court finds that the ALJ's mischaracterization of the evidence substantially affected Plaintiff's**

---

[175] Adm. Rec. at 388.

[176] *Supra* note 146.

[177] *Supra* notes 152 and 155.

[178] Adm. Rec. at 663–70.

[179] *Id*. at 391.

[180] *Supra* notes 146, 152, 155.

**rights.** The ALJ failed to acknowledge the 24 instances of headaches noted in Plaintiff's medical records from 2013 through 2015, in addition to multiple instances in 2016 through 2018, when weighing the Medical Source Statement from Dr. Larcena. Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence.

## C.   *Limitations Caused by Migraines and Determining Residual Functional Capacity*

Even though the ALJ included headaches in the list of findings concerning Plaintiff's severe impairments, the ALJ included no related limitations in residual functional capacity due to headaches.[181] Because the ALJ gave very little weight to the October 24, 2013 opinion of Dr. Larcena, the evaluation of residual functional capacity by the ALJ did not include any limitations caused by Plaintiff's migraines.[182] In accordance with 20 C.F.R. § 404.1529 and § 416.929, an ALJ may call upon a medical expert to help them determine whether an individual's medically determinable impairment could reasonably be expected to produce his or her symptoms.[183] In

---

[181] Adm. Rec. at 383.

[182] *Id.* at 385, 392–93.

[183] *See also* SSR 16-3p.

accordance with SSR 96–2p[184] and HALLEX I-2-5-34,[185] the ALJ shall call a medical expert to determine if Plaintiff's headaches, as described in the record, could reasonably be expected to require Plaintiff to lay in a quiet, dark room for a day once or twice a month during the alleged period of disability. If so, or if the medical expert finds other limitations due to Plaintiff's migraines, consideration of the limitations should be included when determining Plaintiff's residual functioning capacity.

Accordingly, the Court sustains Plaintiff's objections, rejects the Magistrate Judge's Report and Recommendation, and remands the case to the ALJ for a new hearing with a medical expert to address Plaintiff's headaches when determining her residual functioning capacity.

---

[184] "[I]n some instances, additional development required by a case--for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings--may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record. In such instances, the treating source's medical opinion will become controlling if, after such development, the opinion meets the test for controlling weight. Conversely, the additional development may show that the treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or may create an inconsistency between the medical opinion and the other substantial evidence in the case record, even though the medical opinion at first appeared to meet the test for controlling weight. Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed. However, in cases at the administrative law judge (ALJ) or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." SSR 96–2p.

[185] HALLEX I-2-5-34 (A)(1) states in pertinent part, "When the ALJ must obtain an ME [medical expert] opinion, either in testimony at a hearing or in responses to written interrogatories in the following circumstances: The Appeals Council or Federal court ordered an ME opinion." While HALLEX does not carry the authority of law, the Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." See *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). If prejudice results from a violation, the result cannot stand. *Id.* (quoting *Newton*, 209 F.3d at 459).

## V. Conclusion

For the foregoing reasons, the Court concludes that the ALJ mischaracterized the evidence regarding Plaintiff's headaches and the mischaracterization substantially affected Plaintiff's rights because the ALJ failed to acknowledge the 24 instances of headaches noted in Plaintiff's medical records from 2013 through 2015, in addition to multiple instances in 2016 through 2018, when weighing the Medical Source Statement from Dr. Larcena. Therefore, the Court concludes that the ALJ's decision to give little weight to Plaintiff's treating physician is not supported by substantial evidence in the record.

Moreover, because the ALJ found that Plaintiff's headaches were a severe impairment, but did not include any related limitation in Plaintiff's residual functioning capacity, the ALJ shall call a medical expert to determine if Plaintiff's headaches, as described in the record, could reasonably be expected to require Plaintiff to lay in a quiet, dark room for a day once or twice a month during the alleged period of disability.[186] If so, or if the medical expert finds other limitations due to Plaintiff's headaches, the limitations should be included when determining Plaintiff's residual functioning capacity. Therefore, the Court sustains Plaintiff's objections, rejects the Magistrate Judge's Report and Recommendation, and remands the case to the ALJ for a new hearing with a medical expert to address Plaintiff's headaches when determining her residual functioning capacity. Accordingly,

---

[186] SSR 96–2p. HALLEX I-2-5-34. *See also supra* notes 182 and 183.

**IT IS HEREBY ORDERED** that the Court **SUSTAINS** Plaintiff's objections and **REJECTS** the Magistrate Judge's recommendation;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ pursuant to 42 U.S.C. § 405(g) for a new hearing and opinion consistent with this Court's Order and Reasons. The ALJ shall call a medical expert to determine if Plaintiff's headaches, as described in the record, could reasonably be expected to require Plaintiff to lay in a quiet, dark room for a day once or twice a month during the alleged period of disability. If so, or if the medical expert finds other limitations due to Plaintiff's migraines, consideration of the limitations should be included when determining Plaintiff's residual functioning capacity.

**NEW ORLEANS, LOUISIANA,** this __30th__ day of March, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

32